UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Gary Dressler,

                    Plaintiff,                            Case No.  1:15cv606

                v.                                Judge Michael R. Barrett

Bradford Rice, *et al.*,

                    Defendants.

**OPINION & ORDER**

This matter is before the Court on cross motions for summary judgment filed by each of the parties. (Docs. 74, 75, 82, 84, 85) and the responsive memoranda thereto. This matter is now fully briefed and ripe for review.

As an initial matter, Defendants Pierce Bryant, Kroger Co., and Larry Noschang ("the Kroger Defendants") filed three motions *instanter* for leave to file excess pages (Docs. 102, 103, 104). The motions were filed after-the-fact, in an effort to comply with the Court's standing order as it relates to page limits. In conjunction with Plaintiff's response to the Kroger Defendants' motion for summary judgment, Plaintiff moved to strike their motion for failure to comply with the Court's standing orders. The Court declines to do so, and **GRANTS** the Kroger Defendants' motions for leave to file excess pages (Docs. 102, 103, 104).

I.      **BACKGROUND/FACTS**

On September 20, 2013, Plaintiff walked quickly[1] into the Kroger store located on Glenway Avenue in Cincinnati, Ohio open carrying a handgun on his left hip. (Doc. 80, PageID 90, 722-26). That day, Defendant Bradford Rice was assigned to work as a security guard at that

---

[1] While the parties dispute Plaintiff's demeanor upon walking into the store, Plaintiff concedes he always looks to be in a hurry, as he walks at a fast pace. (Doc. 80, PageID 725, 849).

store.  Rice, an employee of Defendant Safe Environment Business Solutions, Inc. ("SEB"), was a licensed security guard in the State of Ohio.  (Id. at PageID 730; Doc. 85-1).  Kroger and SEB had a written agreement wherein SEB would provide security guard services at various Kroger stores, including the Glenway Avenue store. (Doc. 74-11).  When Rice was on duty as a security guard at Kroger, he wore a security guard uniform with arm patches and carried a holstered handgun.  (Doc. 80, PageID 838-39).

When Plaintiff entered the store, Rice approached him.  (Id).  According to the report completed by Rice after the incident, Rice instructed Plaintiff "to return his firearm to his vehicle in order to avoid any panic on the property."  (Doc. 85-2).  Although Plaintiff was unaware Rice spoke to him, it is undisputed some sort of brief exchange between the two of them occurred before Plaintiff walked away from him and continued on into the store.  (Doc. 74-1; Doc. 82-1, PageID 1059 at ¶ 17; Doc. 85-2).  During that exchange, Plaintiff partially turned to face Rice. (Doc. 74-1).  Plaintiff, however, "is pretty well deaf in his left ear" – the direction in which Plaintiff turned to face Rice.  (*See e.g.* Doc 82-1, PageID 1058 at ¶¶ 2, 15; Doc. 82-10, PageID 1172).  Nevertheless, according to Plaintiff, he walked away from Rice soon after because he did not recognize him as a security guard.  (Doc. 80, PageID 731, 744).  In fact, when Plaintiff turned away from Rice and walked into the store, he did so in a hurry, specifically to get away from Rice.  (Id. at PageID 765).  He later testified he thought Rice was a homeless man based upon his appearance.  (Id).  As a result, despite his hearing problem, Plaintiff made no effort to try to hear what Rice was saying.  (Id. PageID 977).

After Plaintiff proceeded into the store, Rice called the police and "requested a cruiser be sent in order to safely avoid any escalation from the subject and the current situation."[2]  (Doc.

---

[2] The parties dispute whether Rice approached Plaintiff a second time before calling police.  This fact, however, is not material to the Court's analysis and thus, does not preclude summary judgment.

85-2). Defendants Jeffrey Zucker and Jerry Hodges, Cincinnati Police Officers, responded to the call. (Doc. 84-5; Doc. 84-6). When they arrived, Rice led Officer Zucker and Officer Hodges to Plaintiff. (Doc. 82-1, PageID 1059 at ¶ 19). Defendants approached Plaintiff and asked if he had heard Rice's requests to leave the store. (Id. at ¶ 22). Plaintiff indicated he was unaware he had been asked to leave the store. (Id. at ¶ 25). According to Officer Zucker, Plaintiff was very argumentative. (Doc. 84-5, PageID 1379 at ¶ 5). While Plaintiff disputes this fact, he does concede he may come across as being argumentative because he talks with his hands and has a loud voice. (Doc. 82-1, PageID 920-21).

According to Plaintiff, Defendants told him there was a sign posted at that Kroger store indicating he was not permitted to have a firearm in the store. (Id. at ¶ 26-29). When they got outside, however, there was no sign prohibiting the same. (Id.). Instead, there was a sign warning "that if liquor was being dispensed in a room they may be committing a felony if they were carrying a firearm." (Id. at ¶ 30; Doc. 82-1). Despite this, Plaintiff was arrested for criminal trespass. (Doc. 85-4). On June 1, 2015, following a bench trial, Judge Yates found Plaintiff not guilty of criminal trespass. (Doc. 82-3).

Plaintiff brings the following claims against Defendants: 1) violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983; 2) conspiracy to violate Plaintiff's constitutional rights pursuant to 42 U.S.C. §§ 1985, 1986; and 3) common law tort claims for false arrest, false imprisonment, malicious prosecution, conversion, and intentional infliction of emotional distress.

## II. **STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  These standards upon which the court evaluates motions for summary judgment do not change simply because the parties present cross-motions.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

## III.   ANALYSIS

### A.  Evidentiary Issues

Various parties raise evidentiary issues related to use of certain testimony from Plaintiff's criminal trial.  As such, the Court must first decide whether the evidence is properly considered at the motion for summary judgment stage, or whether the statements are inadmissible hearsay.

Hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  Certain statements, however, despite being made out-of-court, do not constitute hearsay.  Fed. R. Evid. 801(d).  In addition, there are various exceptions to the hearsay rule.  Fed. R. Evid. 803, 804.

Plaintiff first objects to Defendants' use of Rice's trial testimony as hearsay.  If a statement is offered against an opposing party, the statement is not hearsay.  Fed. R. Evid. 801(d)(2).  Here, however, Defendants are the proponents of Rice's prior trial testimony.  Because Rice is not a party-opponent of Defendants, his prior trial testimony is hearsay.  The Court acknowledges that

4

the same testimony, if testified to at trial in this case, would not constitute hearsay. Fed. R. Evidence 801(d)(1)(B). And, as a practical matter, Rice's trial testimony would be akin to a sworn affidavit—evidence properly considered pursuant to Federal Rule of Civil Procedure 56. In fact, the Court recognizes that in certain circumstances, Rice's prior trial testimony could be considered more reliable than a sworn affidavit. For purposes of summary judgment, however, Rice should have reduced his anticipated testimony to an affidavit that meets the requirements of Federal Rule of Civil Procedure 56(c)(4), rather than rely on prior trial testimony. Nevertheless, as a general rule, the Court is not necessarily adverse to the consideration of prior trial testimony. However, the testimony that is part of the record in this case is incomplete. Just as the Court would not consider a partial affidavit, the Court is unwilling to consider partial trial testimony for purposes of summary judgment. Thus, to the extent Defendants rely on Rice's prior trial testimony, the Court declines to consider it.

Similarly, Defendants rely on certain statements made by Judge Yates during Plaintiff's criminal trial essentially admonishing Plaintiff's behavior on the day of the incident. As Judge Yates's statements were not made while testifying in the current trial, and do not fall within an exception to the hearsay rule, they too are inadmissible.

Finally, at oral argument, the Kroger Defendants objected to Plaintiff's use of Officer Zucker's prior trial testimony as hearsay. They argue the Kroger Defendants did not have the opportunity to cross examine him (because they were not a party to the criminal trial) and thus, his testimony cannot be considered. The Court disagrees. Plaintiff is the proponent of Officer Zucker's prior trial testimony. Because his statements are being offered by Plaintiff against Officer Zucker—an opposing party—his statements are not hearsay. Fed. R. Evid. 801(d)(2)(A). Thus, to the extent Plaintiff relies on Officer Zucker's prior trial testimony, it is admissible.

**B. Federal Claims**

Section 1983 creates a cause of action to remedy constitutional violations as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."[3] *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir.2006). Thus, "a determination as to whether the defendant acted under the color of state law is a threshold matter." *Wilerson v. Warner*, 545 F. App'x 413, 419 (6th Cir. 2013) (citing *Waters v. City of Morristown*, 242 F.3d 353, 358–59 (6th Cir. 2001).

In addition to bringing claims against parties who were undoubtedly acting under color of state law, Plaintiff also brings Section 1983 claims against private parties. The Court begins its analysis here.

**1. Private Parties**

A private party's actions constitute state action under Section 1983, only when their actions are "fairly attributable to the state." *Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007); *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996).

---

[3] Plaintiff brings a claim under Section 1983 for violations of his Fifth Amendment rights. The Fifth Amendment's guarantee of due process applies only to the federal government, not to state governments, and not to individual people. *See Pub. Utilities Comm'n of D.C. v. Pollack*, 343 U.S. 451, 461 (1952); *Blevins v. Cty of Franklin, Ohio*, No. 2:08-cv-1113, 2011 WL 1043509, at *9 (S.D. Ohio Mar. 17, 2011). Plaintiff does not allege any of the Defendants are federal government actors. Accordingly, Plaintiff's claims under the Fifth Amendment fail as a matter of law.

### a. **Kroger and SEB**

As an initial matter, at oral argument Plaintiff abandoned his *respondeat superior* claims against Kroger and SEB under Sections 1983, 1985(3), and 1986. However, when the Court asked for clarification, he appeared to backpedal. In an abundance of caution, the Court will briefly address this issue.

The issue of *respondeat superior* related to Section 1983 claims was first addressed in *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) wherein the Court found the doctrine did not apply to municipalities. Instead, the Court found a municipality is only liable if the government entity's policy or custom caused a violation of a constitutional right. *Id.*

Plaintiff argues that because Kroger and SEB are not municipalities they can be held liable under a theory of vicarious liability or *respondeat superior*. This argument defies logic. If municipalities—employers who employ state actors subject to liability under Section 1983—are immune from suit under a vicarious liability or *respondeat superior* basis, then private employers—employers who employ private individuals generally not subject to liability under Section 1983—should at the very least be afforded the same protections. Indeed "every circuit to consider the issue has extended the holding [in *Monell*] to private corporations as well." *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996) (quoting *Harvey v. Harvey,* 949 F.2d 1127, 1129–30 (11th Cir.1992)). Accordingly, Kroger and SEB are not subject to liability in this regard, and are entitled to judgment as a matter of law with respect to Plaintiff's claims under Section 1983.

### b. **Bradford Rice**

With respect to Rice, the threshold question is whether his duties as a security guard are fairly attributable to that of the state. The Sixth Circuit applies three tests developed by the Supreme Court to determine the existence of state action in a particular case: (1) the public function test, (2) the state compulsion test[4], and (3) the symbiotic relationship or nexus test. *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996).

Plaintiff argues Rice's conduct satisfies the nexus test. Another court in this district succinctly explained the nexus test as follows:

> "Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335 (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974)). In order for there to be a symbiotic relationship, "it must be demonstrated that the state is intimately involved in the challenged private conduct." Id (citing *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir.1983)). A sufficiently close nexus may be found to exist where "the private actor has exercised powers 'traditionally the exclusive prerogative of the state,'... or where the state has exerted coercive power or 'significant encouragement' with regard to the particular challenged private conduct." *Kerans v. Porter Paint Co.*, 656 F.Supp. 267, 270 (citing Jackson, 419 U.S. at 353; *Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982)). Although no clear standard exists to identify a "sufficiently close nexus," several factors have been deemed insufficient, including: the mere presence of state regulation, even if extensive; public funding or the private use of public property; the presence of a minority of public officials on the board of a private entity; the state's acquiescence or approval of a private activity; and a private actor's use of public services. *Farmer v. Pike County Agric. Soc'y*, No. 2:05–cv–0664, 2006 U.S. Dist. LEXIS 32832 (S.D.Ohio May 24, 2006) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 829 (6th Cir.2000) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992))).

*Williams v. New Day Farms, LLC*, No. 2:10-CV-00394, 2011 WL 1256059, *10 (S.D. Ohio March 31, 2011). Despite asserting Rice's conduct meets the nexus test, Plaintiff does not explain how the state was intimately involved with Rice's conduct on the day in question. And

---

[4] No party has asserted the state compulsion test is applicable to this case and thus, the Court does not address it.

he cites no precedent in support wherein a similar private actor's conduct was found to constitute state action.[5]  As an initial matter, Although Rice was a licensed security guard in the state of Ohio, his conduct while acting as a security guard for Kroger was governed by a business relationship between Kroger and SEB.  (Doc. 85-1, PageID 1427).  Further, no party alleges SEB receives state funding, as it is a private security company.

Upon review, the Court fails to see how acting as a private security guard equates to exercising powers that are traditionally the exclusive prerogative of the state.  Indeed, the actions of Rice on the day in question compel the Court to reach the opposite conclusion.  When Rice was troubled by the actions of another individual (Plaintiff), regardless of whether his concerns were warranted, he did what any other private citizen would do—he called 911.  It is well-established that use of public services by private actors does not transform private action into state action.  *See Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000) (citing *Ellison v. Garbarino*, 48 F.3d 192, 197 (6th Cir. 1995)).  Therefore, Rice's conduct cannot be fairly treated as that of the state itself and thus, there is not a sufficiently close nexus necessary to render his conduct state action.

Nor does Rice's conduct satisfy the public function test.  Plaintiff asserts the public function test is immaterial to this case.  However, other courts addressing the issue of whether a security guard's conduct is attributable to the state have applied the public function test, and are instructive to this Court's analysis.  To satisfy the public function test, the private individual must exercise powers traditionally exclusively reserved for the state.  *Wolotsky v. Huhn*, 960 F.3d 1331, 1335 (6th Cir. 1992) (citing *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S.Ct. 449, 454, 42 L.Ed.2d 477 (1974)).

---

[5] Plaintiff cites *Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) for the proposition that Rice's conduct satisfies the nexus test.  The Court notes, however, that *Moldowan* does not address the nexus test.

In *Lindsey v. Detroit Entertainment, LLC*, the Sixth Circuit was presented with the question of when security personnel are considered state actors. 484 F.3d 824 (6th Cir. 2007). In finding the casino security guard was not a state actor, the Court distinguished between security personnel who were granted plenary police powers to effectuate arrests and those whose powers were limited to those possessed by ordinary citizens.[6] *See id.* The Court reasoned that endowing security guards with unfettered power to make an arrest effectively transforms them into state actors, as the power to arrest is traditionally reserved for the state alone.

Here, there is no question Rice was not authorized to arrest Plaintiff. Instead, he had to call the police. In other words, there is no evidence Rice was bestowed any power exclusively reserved for the state. Accordingly, Rice's conduct does not satisfy the public function test.

### c. <u>Larry Noschang</u>

Larry Noschang's conduct likewise falls short of constituting state action. It is undisputed that Noschang was not present when Rice first approached Plaintiff. (Doc. 80, PageID 782-83). He was not present when Officer Zucker and Officer Hodges confronted Plaintiff. (Id.). Nor was he present when Plaintiff was handcuffed. (Id.). In fact, Plaintiff asserts Noschang "was sued because the police officer's testimony said they talked to Larry Noschang in regards to the incident." (Id.). Put simply, this is not sufficient to constitute state action.

This, however, does not end the inquiry. Plaintiff also alleges that the private parties are liable because they conspired with state actors to deprive individuals open carrying firearms of their constitutional rights. If a private party conspires with state officials to violate an individual's constitutional rights, then that party may be held liable under Section 1983. *Cooper v. Parrish,*

---

[6] Michigan law bestows upon licensed security guards misdemeanor arrest authority. The parties have not directed the Court to an analogous Ohio law.

203 F.3d 937, 952 n. 2 (6th Cir.2000). In other words, "[p]rivate parties jointly engaged in a deprivation of civil rights are acting under color of state law for purposes of § 1983." *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir.1985).

As the Sixth Circuit has explained, in order to succeed on a civil conspiracy claim under Section 1985(3), Plaintiff must prove: " '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.' " *Vakilian v. Shaw,* 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)).

Defendants rely on the Sixth Circuit's holding in *Wilkerson v. Warner*, 545 Fed.Appx. 413, 421 (6th Cir. 2013) wherein the Court largely adopted the holdings of other circuits finding that merely furnishing information to police officers who then choose to take action does not constitute a conspiracy for purposes of Section 1983 liability. Plaintiff argues *Wilkerson* is distinguishable because Rice and Noschang actually engaged with police; the Court disagrees.

Here, Rice observed someone walking quickly into the store open carrying a firearm. He engaged that individual, who, unbeknownst to Rice was unable to hear him, and as a result, ignored Rice's request and continued to walk into the store. Consequently, Rice called the police. Plaintiff takes issue with the incident report and arrest report indicating Rice called the police because Plaintiff had a gun, arguing this amounts to evidence of a conspiracy. However, even assuming Rice told police the reason for the call was because Plaintiff had a gun, this still falls

within the confines of furnishing information. Upon receiving the information, it was up to the police officers what to do next.

Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the undisputed evidence fails to establish a conspiracy. Plaintiff began shopping at the Kroger store on Glenway Avenue in 2009, always electing to open carry his firearm. (Doc. 80, PageID 796). He witnessed a security guard at the front of the store on previous occasions, yet until the day of the incident had not been questioned. (Id.). Moreover, there is no evidence Defendants knew each other prior to September 20, 2013. (Id. at PageID 809). Plaintiff admits he never had personal interaction with Defendants prior to the day of the incident. (Id. at PageID 809). And after the incident, there is no evidence Defendants met and discussed Plaintiff's case before his criminal trial.[7] (Id.).

Further, Plaintiff has not established a class-based discriminatory animus by the alleged conspirators. *See Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (finding "[t]he language requiring intent to deprive of equal protection  or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions"). While Plaintiff alleges Defendants conspired to discriminate against individuals open carrying in Kroger stores, he points to no evidence in the record establishing the same. Importantly, Plaintiff concedes there is no evidence Defendants met and discussed targeting people who open carried weapons in Kroger stores. (Id. at PageID 809). There is likewise no evidence the Kroger Defendants instructed Rice to stop individuals open carrying. Nor is there evidence Rice had previously called the police to arrest

---

[7] Based upon this evidence, Pierce Bryant is entitled to summary judgment on Plaintiff's Sections 1983, 1985(3), and 1986 claims. Bryant was not present at the time of Plaintiff's arrest. Rather, Bryant testified as to various Kroger policies at Plaintiff's criminal trial. (Doc. 80, PageID 780-82). As Plaintiff's only issue with Bryant is his testimony at trial, and there is no evidence of discussion amongst the Defendants prior to Plaintiff's trial, there is likewise no evidence Bryant conspired with anyone to violate Plaintiff's rights.

someone open carrying in a Kroger store. Finally, there is no evidence the police had, on any occasion in the past, responded to and subsequently arrested someone in a Kroger store who was open carrying a firearm.

In sum, Plaintiff's conclusory allegations amount to an assertion that Defendants conspired to violate his constitutional rights because they all, in some form or another, participated in his arrest and prosecution. Following Plaintiff's reasoning, each time someone was arrested, charged, tried, and acquitted, a conspiracy would necessarily be formed. That is, quite simply, not the law. "It is well-settled that conspiracy claims must be pled with some degree of specificity; vague conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004).

Having found their actions were not fairly attributable to the state and thus, they were not acting under color of state law on the day in question, Rice, Noschang, and Bryant are entitled to summary judgment on Plaintiff's claims under Sections 1983, 1985(3), and 1986[8].

### 2. <u>State Actors</u>

As for the remaining parties, Plaintiff argues Defendants violated his Second, Fourth, and Fourteenth[9] Amendment rights by depriving him of his right to bear arms, illegally arresting him, and subjecting him to an unreasonable search and seizure. In response to Plaintiff's Section 1983 claims, Officer Zucker, Officer Hodges, the City of Cincinnati, Interim Police Chief Paul H. Humphries, Chief of Police Jeffrey Blackwell, and the unknown John/Jane Does invoke the doctrine of qualified immunity. Under the doctrine of qualified immunity, "government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties if

---

[8] A claim under Section 1986 is predicated on a violation of Section 1985. Thus, because Plaintiff failed to establish a violation under Section 1985, his Section 1986 claim likewise fails. *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000).
[9] [9] The Fourth Amendment is applicable to state actors through the Fourteenth Amendment. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005).

'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443-444 (6th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

In determining whether a government official is entitled to qualified immunity, the Court asks two questions: 1) in viewing the facts in the light most favorable to the plaintiff, has a constitutional violation occurred; and 2) was that constitutional right clearly established at the time of the violation such that a "reasonable official would understand that what he is doing violates that right." *Simmonds*, 682 F.3d at 443-445 (citing *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Courts have discretion to decide which of the "two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808 (2009).

Plaintiff bears the burden of pleading facts that establish these two elements. *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419-420 (6th Cir. 2001). Although qualified immunity is an affirmative defense that must be raised by a defendant, once an official raises the defense "the burden is on the plaintiff to demonstrate that the official [is] not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir.2006).

The Court elects to analyze the second prong of the qualified immunity analysis first. That is, whether a constitutional right under the Second, Fourth, and Fourteenth Amendment was clearly established at the time the violation occurred. A right is clearly established if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Goode v. Berlanga*, 646 Fed.Appx. 427, 430 (6th Cir. 2016) (quoting

14

*Mullenix v. Luna,* —— U.S. ——, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (internal quotation marks omitted)).

The Sixth Circuit recently explained:

> While courts do not require a case directly on point in order to find that a right is clearly established, "existing precedent must have placed the statutory or constitutional questions beyond debate." *Id.* (quoting *al–Kidd,* 563 U.S. at 741, 131 S.Ct. 2074). "The pre-existing law that makes a right clearly established comes primarily from the Supreme Court and the Sixth Circuit, but it can also come from other courts, including other circuits and district courts, if the decisions of those courts 'point unmistakably to the unconstitutionality of the conduct' and are 'so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct was unconstitutional.' " *Linden v. Piotrowski,* 619 Fed.Appx. 495, 500 (6th Cir.2015) (quoting *Perez v. Oakland Cnty.,* 466 F.3d 416, 427 (6th Cir.2006)).

*Goode*, 646 Fed.Appx. at 430.

### a. <u>Second Amendment</u>

### i. <u>Officer Zucker and Officer Hodges</u>

Plaintiff contends Officer Zucker and Officer Hodges violated his right to bear arms under the Second Amendment to the United States Constitution. As the Supreme Court has explained, "[l]ike most rights, the Second Amendment right is not unlimited." *District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 2816 (2008). The right to bear arms is not a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626, 128 S.Ct. 2783.

Plaintiff argues Defendants violated his "federally protected right to bear arms by prohibiting him from open carrying his weapon in the Kroger Store." (Doc. 82, PageID 1021). Accordingly, the Court understands Plaintiff's argument as alleging a clearly established Second Amendment right to openly carry a firearm in a private establishment. Plaintiff fails to point to existing precedent establishing the same.

Instead, Plaintiff cites to *Northrup v. City of Toledo Police Dept.*, 785 F.3d 1128.  In *Northrup*, however, the question before the Sixth Circuit was whether detaining someone who lawfully possesses a firearm on a public street violated the Fourth Amendment.  In fact, by the time the interlocutory appeal was filed, the district court, having found no existing precedent, had already found the defendants were entitled to qualified immunity on plaintiff's Second Amendment claim.  *Northrup v. City of Toledo Police Div.*, 58 F.Supp. 842, 850 (N.D. Ohio 2014).  Accordingly, Plaintiff's reliance on *Northrup* in support of his Second Amendment Section 1983 claim is misplaced.

Plaintiff also makes reference to *McDonald v. City of Chicago*, 561 U.S. 742, 130 S. Ct. 3020 (2010).  In *McDonald*, the Supreme Court found there was a clearly established Second Amendment "right to possess a handgun in the home for the purpose of self-defense" pursuant to the Due Process Clause of the Fourteenth Amendment.  Plaintiff fails to explain how the Court's holding in *McDonald*—finding a right to bear arms in one's own home—extends to the right to bear arms in a private business establishment.

Finally, Plaintiff argues that with respect to the right to bear arms, Ohio Rev. Code § 9.68 "specifically protects the constitutional rights already granted in the United States Constitution. . ." (Doc. 97, PageID 1782).  In other words, Plaintiff argues the act of ordering Plaintiff to return his firearm to his vehicle is a violation of § 9.68, and that violation is evidence of a violation of his Second Amendment rights.  Plaintiff misses the mark.  As the Sixth Circuit explained, "§ 1983 claims are designed to vindicate federal law, not state law. He offers no explanation why the officers' alleged failure to comply with state law itself violates the United States Constitution in general or the Second Amendment in particular.  The '[m]ere violation of a state statute does not infringe the federal Constitution.'"  *Embody v. Ward*, 695 F.3d 577, 581 (6th Cir. 2012) (quoting

*Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944)); *See also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (finding alleged violations of state constitutions or statutes are not cognizable claims under Section 1983).

Accordingly, Plaintiff has failed to meet the second prong of the qualified immunity analysis, as he has not shown a clearly established right to openly carry a firearm in a private establishment. "Such a right may or may not exist, but the critical point for [this Court's] purposes is that it has not been established—clearly or otherwise at this point." *Embody*, 659 F.3d at 582.

## ii. <u>Municipal Liability</u>

Having reached the above conclusion, the Court is compelled to find the other state actors—the City of Cincinnati, Interim Police Chief Paul H. Humphries, and Chief of Police Jeffrey Blackwell—too are entitled to qualified immunity with respect to Plaintiff's Section 1983 claims under the Second Amendment. In the absence of any constitutional violation, there necessarily can be no unconstitutional custom or policy. *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012) ("Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights").

## b. <u>Fourth Amendment</u>

Plaintiff next argues his Fourth Amendment right to be free from search and seizure was violated when he was unlawfully arrested for criminal trespass without probable cause. The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. Thus, "a law enforcement officer may not seize an individual except after establishing probable cause that the individual has committed, or is about to commit, a crime." *Williams ex rel. Allen v. Cambridge Bd. of Educ.,* 370 F.3d 630, 636 (6th Cir.2004).

To begin, the Court concludes that an individual's right to be free from seizure without probable cause is a clearly established right for purposes of a qualified immunity analysis, as there is existing precedent that definitively answers the question. *See e.g. Radvansky v. City of Olmsted Falls*, 395 F.3d 291 (6th Cir. 2005). Because the Court finds that a constitutional right was clearly established at the time of the alleged violation, the Court will consider if, when considering the facts in the light most favorable to Plaintiff, a question of fact exists as to whether a constitutional violation occurred.

Whether an officer had probable cause is analyzed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Radvansky*, 395 F.3d at 302 (citing *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001)) (internal citation omitted). While the existence of probable cause is generally a question for the jury, the Court still must determine whether "there is only one reasonable determination possible based on the evidence produced by the parties." *Snyder v. Kohl's Dept. Stores, Inc.*, 580 Fed Appx. 458, 462 (6th Cir. 2014) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000)).

Plaintiff argues, as evidenced by the arrest report, he was arrested for having a gun in Kroger – not for criminal trespass. Indeed, the CAD report labels both the "initial call type" and "final call type" as "gun."[10] (84-4, PageID 1376). The substance of the report notes that a customer with a gun "refused to stop when security told him no guns in store." (Id.). Further, the arrest report provides as follows:

> [Plaintiff] entered above location and was stopped by uniform security in lobby and told he [Plaintiff] was not permitted in store with a firearm and to secure same in his vehicle if he wanted to enter. [Plaintiff] refused and entered store,

---

[10] Defendants argue Rice informed dispatch there was a person at the store who was "criminally trespassing" while in possession of a firearm. (Doc. 84, PageID 1252). Defendants, however, rely on the trial testimony of Officer Zucker in support of their argument. As discussed *supra* the criminal testimony of Officer Zucker is inadmissible hearsay to the extent Defendants are the proponents of the statements. As such, the Court declines to consider the testimony.

refusing to exit. Upon police arrival, [Plaintiff] became argumentative with security [and] police [and] was placed under arrest.

(Doc. 74-7, PageID 580). Nevertheless, Plaintiff was ultimately charged with criminal trespass. Accordingly, whether Officer Zucker had probable cause to arrest Plaintiff for criminal trespass guides the Court's analysis. However, because it appears as though the officers initially responded to the call for at least one other reason, the Court will first address whether Officer Zucker and Officer Hodges acted reasonably in responding to Rice's 911 call.

While police officers in most circumstances must first obtain a warrant for a search or seizure, the Sixth Circuit has recognized certain exigent circumstances excusing an officer's failure to do so. *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010). Responding to a 911 call falls squarely within the exigent circumstances doctrine. *Id.* at 870. The Sixth Circuit explained, "[t]he whole point of the 911 system is to provide people in need of emergency assistance an expeditious way to request it . . . Because a 911 call is by its nature an appeal for help in an emergency, the emergency aid exception best fits the attitude of police responding to a 911 call under the circumstances present here." *Id.*

Here, Officer Zucker and Officer Hodges responded to a 911 call seeking assistance with a customer who had a gun. Upon arrival, the officers were informed by Rice there was an individual in the store who refused to leave. (Doc. 84-5, PageID 1379 at ¶ 3). This information, coupled with the fact that Plaintiff ignored Rice[11] and walked quickly into the store supports a reasonable suspicion of criminal activity necessary to briefly detain and further question Plaintiff. (Doc. 80, PageID 765). While not illegal to open carry a firearm in Kroger, the Fourth Amendment's protection against unwarranted government intrusion must be balanced with

---

[11] While the Court acknowledges Plaintiff contends he did not hear Rice, Plaintiff did not remember telling anyone, during the entire encounter with Rice or police, that he was hard of hearing in his left hear. Accordingly, at the time of the incident, all Officer Zucker and Officer Hodges knew was that Rice approached Plaintiff upon his entering the store, and Plaintiff walked away from him. (Doc. 80, PageID 972).

concerns for public safety. *See United States v. Bishop*, 338 F.3d 623, 625-26 (6th Cir. 2003). Had Plaintiff started shooting, police would have a difficult time explaining their failure to further investigate a man with a firearm in Kroger. *See Baker v. Smiscik*, 49 F.Supp.3d 489, 500 (E.D. Mich. 2014). Thus, even if the facts known to Officer Zucker and Officer Hodges did not initially support a reasonable suspicion of criminal trespass, the facts nevertheless established reasonable suspicion of a more general nature allowing for further investigation. *Id.* at n. 6.

 Having determined Officer Zucker and Officer Hodges were acting within the confines of the Fourth Amendment in responding to the 911 call and approaching Plaintiff to investigate, the Court must next determine whether there was probable cause to arrest Plaintiff for criminal trespass.

Relevant to this case, Ohio law defines criminal trespass as follows: "(A) No person, without privilege to do so, shall do any of the following: (1) Knowingly enter or remain on the premises of another . . . or (4) being on the land or premises of another, negligently fail or refuse to leave upon being notified by signage posted in a conspicuous place or otherwise being notified to do so by the owner or occupant, or the agent or servant of either." Ohio Rev. Code 2911.21(A). Privilege is defined as "immunity, license, or right conferred by law, bestowed by express or implied grant, arising out of status, position, office, or relationship, or growing out of necessity." Ohio Rev. Code 2901.01(12).

It is undisputed there was no sign prohibiting Plaintiff from open carrying his firearm in Kroger that day. Thus, the crux of Plaintiff's argument is that because he was lawfully open carrying his firearm, he had the privilege to remain in Kroger and should not have been asked to leave. The parties appear to agree that Plaintiff was a business invitee upon Kroger's property and consequently, at least initially, had the consent of Kroger and its agents and employees to be

20

on the premises.  Accordingly, the Court must determine whether Plaintiff's privilege to be on the premises had been revoked at any point during the encounter.

Plaintiff, as a customer of Kroger, had the privilege to remain on the premises until he was provided with "reasonable notification to leave by the owner or his agents."  *See e.g. City of Richmond Heights v. Hoolin*, 8th Dist. Cuyahoga No. 55818, 1989 WL 98765, at *3 (Aug. 24 1989).  It is undisputed Rice, as an agent of Kroger, asked Plaintiff to leave the store.  The arrest report confirms as much.  (Doc. 74-7, PageID 580) ("[Plaintiff] refused and entered store, refusing to exit").

Plaintiff contends, however, Rice improperly asked him to leave the store solely because he was open carrying a firearm.  A strict interpretation of Ohio Rev. Code 2911.21(A), however, reveals that the statute does not require a property owner or agent to provide a reason for revoking an individual's privilege.  *See e.g. Cleveland v. Dickerson*, 60 N.E.3d 686, 692 (8th Dist. 2016).  Rather, it requires the visitor not to negligently remain on the premises after being notified to leave.  Moreover, Ohio courts have held the property owner's motive in making the request is irrelevant.  *Id.* (quoting *State v. Gish*, 4th Dist. Athens No. 94 CA 1612, 1994 WL 693921, *1 (Dec. 1, 1994)).  Accordingly, because Rice, as agent of Kroger, asked Plaintiff to leave the premises, and Plaintiff refused to do so, the Court finds Officer Zucker had probable cause to arrest Plaintiff for criminal trespass.

In the alternative, Plaintiff argues because he left the inside of the store, he left the premises and thus, he could not have been trespassing.  Plaintiff cites no authority in support of his argument, and the Court finds his explanation unpersuasive.  It is undisputed Plaintiff was arrested in the parking lot of the Kroger store.  Accordingly, despite exiting the store itself to see the sign (or lack thereof), Plaintiff remained on the premises of the Kroger store.

As further evidence of the existence of probable cause, Defendants point to the trial court's denial of Plaintiff's Crim. R. 29 Motion for Judgment of Acquittal. They direct the Court to the decision of another court in this district finding "the denial of a Rule 29 motion may be viewed as a determination that the evidence is at least sufficient to demonstrate probable cause." *Brunswick v. City of Cincinnati*, No. 1:10-cv-617, 2011 U.S. Dist. LEXIS 109910 (S.D. Ohio Sept. 27, 2011). This Court finds the reasoning in *Brunswick* persuasive.

Plaintiff argues as the non-moving party, the evidence must be viewed in the light most favorable to him, and because "[h]e denies there was probable cause" the Rule 29 motion has no probative value in this case. (Doc. 112, PageID 2080). While Plaintiff is correct that the Court must view the evidence in the light most favorable to him, Plaintiff's perfunctory denial of the existence of probable cause does not constitute evidence for the Court's consideration.

In sum, considering the evidence in the light most favorable to Plaintiff, the Court finds Officer Zucker had probable cause to arrest Plaintiff for criminal trespass. Accordingly, Defendants are entitled to qualified immunity. The Court therefore grants Defendants' motion as it relates to Plaintiff's claims under the Fourth Amendment. The remaining Defendants are likewise entitled to summary judgment, as there can be no municipal or supervisory liability absent a constitutional violation. *Heyerman v. County of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *See also Hale v. Vance*, 267 F.Supp.2d 725, 737 (S.D. Ohio 2003) (holding "a supervisor is not liable for failing to supervise the offending employee unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it").

### C.  Tort Claims

In addition to Plaintiff's claims under Section 1983, he also alleges various state tort law claims stemming from the incident.

### 1. **Claims for false arrest, false imprisonment, and malicious prosecution**

As Plaintiff's Section 1983 claims fail, so too must his tort claims for false arrest, false imprisonment, and malicious prosecution.

First, to succeed on a claim for false arrest, Plaintiff must establish he was deprived of his liberty without lawful justification. *Koss v. Kroger*, 10th Dist. Franklin No. 07AP-450, 2008 WL 2308771, at *4 (June 5, 2008). Importantly, however, the existence of probable cause in a false arrest renders the arrest lawful and is sufficient to defeat a false arrest claim. *Id.* A claim for false imprisonment requires proof of the same essential elements as a claim for false arrest, as it too is defined as the unlawful restraint of liberty. *See Frazier v. Clinton Cnty Sheriff's Office*, 12th Dist. Clinton No. CA2008-04-015, 2008 WL 4964322, at *4 (Nov. 24, 2008). Thus, the two claims are "indistinguishable." *Id.*

Moreover, "[t]he tort of malicious criminal prosecution is the right to recover damages for the harm caused to a defendant in a criminal case by the misuse of criminal actions." *Criss v. Springfield Twp.*, 56 Ohio St. 3d 82, 84, 564 N.E.2d 440, 443 (Ohio 1990). To prevail on such a claim, Plaintiff must prove the following elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused." *Id.*

Accordingly, because the existence of probable cause is sufficient to defeat tort claims for false arrest, false imprisonment, and malicious prosecution, Plaintiff's claims fail as a matter of law. Thus, Defendants are entitled to summary judgment on these claims.

## 2.  **Claim for conversion**

Plaintiff also brings a claim against the City Defendants for conversion of his property. Specifically, Plaintiff alleges Defendants damaged his firearm and improperly sold his pocket knives at auction, which were seized following his arrest.

Ohio law provides political subdivisions and their employees immunity from tort claims with few exceptions.  Ohio Rev. Code 2744.  Plaintiff argues Defendants conduct falls within one of those exceptions.  That is, when "[t]he employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."  Ohio Rev. Code 2744.03(A)(6)(b). The Court disagrees.

In Ohio, the elements of conversion typically include:  "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages."  *Dice v. White Family Cos.*, 173 Ohio App. 3d 474, 477 (2d Dist. App. 2007).  "Where conversion is premised on the unlawful retention of property, the plaintiff must establish: (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner."  *Id.* (internal quotations omitted).

Plaintiff's firearm, holster, and pocket knives were properly seized subject to his arrest. (Doc. 84-5, PageID 1380 at ¶ 11).  Plaintiff's firearm and holster were returned to him at the conclusion of his trial.  As for his pocket knives, it is undisputed Plaintiff was advised he could pick them up from the Cincinnati Police Department Court Property Unit upon release, as the justice center will not accept weapons.[12]  (Id. at ¶ 12; Doc. 84-6, PageID 1383 at ¶ 14).  The

---

[12] While Plaintiff does not remember Officer Zucker telling him he would need to go to a different location to pick up his knives, he does not dispute Officer Zucker could have told him that.  (Doc. 80, PageID 947).

disposition order prepared on September 20, 2013 notes that Plaintiff's two pocket knives were to be held for Plaintiff. (Doc. 84-9, PageID 1388-89). The chain of custody notes that the two knives were turned over to Cincinnati Court Property on September 23, 2013. (Id.). On August 8, 2014, the knives were authorized to be released to Plaintiff. (Id.). On December 3, 2014, the knives were authorized to be scheduled for disposal. (Id.). The property was released to the property bureau on August 3, 2015. (Id.). Importantly, at no point before the conclusion of his criminal trial did Plaintiff inquire as to where he could retrieve his property. (Id. at PageID 948-49).

Considering the foregoing, the Court finds Defendants are entitled to statutory immunity with respect to Plaintiff's claim for conversion, as the evidence establishes the City followed its procedure for storage and release of Plaintiff's firearm, holster, and pocket knives. (Doc. 84-12; PageID 1393). Moreover, there is not a scintilla of evidence in the record establishing Defendants acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

### 3. Claim for intentional infliction of emotional distress

In order to prevail on an intentional infliction of emotional distress ("IIED") claim, Plaintiff must prove: (1) Defendants intended to cause emotional distress or knew or should have known that its conduct would result in serious emotional distress to Plaintiff; (2) Defendants' conduct was outrageous and extreme and beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) Defendants' conduct was the proximate cause of Plaintiff's psychic injury; and (4) Plaintiff's emotional distress was serious and of such a nature that no reasonable person could be expected to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir.2008). To be liable,

25

Defendants' behavior must go beyond intentionally tortious or even criminal behavior. *Yeager v. Local Union 20*, 6 Ohio St. 3d 369, 375, 453 N.E.2d 666, 671 (1983).

Moreover, when evaluating IIED claims, Ohio courts place great emphasis on the "seriousness" of the emotional distress. *Yeager*, 6 Ohio St. 3d at 375. "Serious emotional distress may be found where a reasonable person would be unable to cope adequately with the mental distress engendered by the circumstances of the incident." *Watkins v. Millennium School*, 290 F.Supp.2d 890, 903 (S.D. Ohio 2003) (citing *Miller v. Currie*, 50 F.3d 373, 378 (6th Cir.1995)). Serious emotional distress may not be found, however, where the plaintiff fails to show he sought medical or psychiatric help or, at least then, he must show that he was unable to function in daily life. *Id.* (citing *Miller v. City of Columbus*, 920 F.Supp. 807, 824 (S.D.Ohio 1996)).

First, Plaintiff concedes he never sought psychiatric treatment of any kind as a result of the incident. (Doc. 80, PageID 827). He never went to the doctor, or purchased any medication specifically related to this incident. (Id. at PageID 959). Moreover, despite alleging he has trouble sleeping as a result of the incident, he admitted it was pretty normal to have trouble sleeping and thus, had not talked to a psychologist about it. (Id. at PageID 828).

Plaintiff also contends his heart pounds in stressful situations following the incident. (Id. at PageID 848). However, he conceded that his heart would also pound in stressful situations prior to the incident. (Id.). And while he alleges he is uncomfortable around officers following the incident, he was comfortable enough to confront an officer parked illegally in a Home Depot parking lot. (Id. at PageID 875-79). He was also apparently comfortable enough to approach and engage in conversation with police officers at various events following the incident. (Id. at PageID 884-87, 891).

In short, Plaintiff's claim for IIED is wholly unsupported by the record, as any distress he suffered in connection with the incident is not serious enough that any reasonable person would be unable to cope with.  Thus, Defendants are entitled to summary judgment.

## IV.   <u>CONCLUSION</u>

Consistent with the foregoing, Defendants are entitled to judgment as a matter of law on the entirety of Plaintiff's claims, as no genuine issues of material fact exist.  Accordingly, Defendants' motions for summary judgment (Docs. 74, 75, 84, 85) are **GRANTED** and Plaintiff's Motion for Summary Judgment (Doc. 82) is **DENIED**.  Upon review, the Court finds the Kroger Defendants' Motion for Protective Order (Doc. 63) is properly **DENIED AS MOOT.** This matter shall be **CLOSED AND TERMINATED** from the docket of the Court.

**IT IS SO ORDERED.**

 *s/Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court